## C. F. GRAY, Guardian, *vs.* JOSEPH BARNARD & others.

### October Term, 1873.

JURISDICTION—SALE OF PROPERTY OF PERSONS UNDER DISABILITY.—Land was conveyed to a trustee in trust for the grantor's wife, and, at her death in the event which has happened, for his own use during life, and at his death for the use of such child or children, or the children of such child or children as may be then living; the wife died leaving the grantor surviving, and one daughter, who has married and has one child. Upon application, under the provision of the Code, for the sale of this land, and re-investment of the proceeds for the benefit of the daughter and child, the grantor being a party and consenting, the court, upon demurrer of infant by guardian *ad litem*, held that it had jurisdiction to order the sale.

JURISDICTION—PERSONS UNDER DISABILITY OR NOT IN BEING—The jurisdiction of the Court of Chancery over the property of persons under disability, or in which persons not *in esse* may have an interest, considered.

*Thos. H. Malone*, for complainant.

*E. H. East*, for children.

THE CHANCELLOR:—On the 4th of November, 1850, Joseph Barnard, in consideration of natural love and affection for his wife Susan and their children, conveyed to Wm. H. Smith a lot on the corner of Spring and Vine streets in Nashville, upon trust " for the sole and separate use of the said Susan Barnard, and with power on her part to dispose of the same by deed or last will and testament, and in case of her death without having disposed of the same, leaving her husband, the said Joseph Barnard, still surviving, for his use during his life, and at his death and after for the use of such child or children, or the children of such child or children as may be then living." Susan Barnard has died, leaving her husband, and one child Mattie Barnard surviving. Since her death, Mattie has intermarried with C. F. Gray and has had one child G. H. Gray. · This bill is filed by C. F. Gray as husband of Mattie and guardian of his infant

child G. H. Gray, against his wife and child, Smith the trustee, and Joseph Barnard, for a sale of said property upon the ground that it is "absolutely necessary to save something for the remainder-men." Barnard, who is entitled to the property for his life, is unable to improve, and refuses to pay taxes, but is willing to a sale and reinvestment in some more profitable shape.

The guardian *ad litem* of the infant defendant, and next friend of the wife of complainant, demurs to the bill, because the bill states no such case as gives the court jurisdiction to decree a sale of the land, and because the persons now in being, and made defendants have no common interest with those who may come into being, and take the estate at the death of the tenant for life.

The argument in support of this demurrer is that the jurisdiction of chancery to sell the real estate of an infant is purely statutory, and that the provisions of the Code, which authorize such sales (Code, § 3323, *et seq.*), do not cover the case made in the bill. It is conceded that the language of the statute is very broad, both as to the property over which the jurisdiction may be exercised, and the persons whose interests may be reached, but, it is insisted, that jurisdiction of the person is a pre-requisite to the exercise of the power, and that, owing to the contingent character of the trust over in this case, such jurisdiction cannot be acquired.

Before considering the sections of the Code more immediately bearing on the questions involved in the discussion, it may not be uninteresting to review the course of judicial decision in this state upon the inherent power of a court of chancery to change the real estate of an infant into personalty.

For many years, owing partly, no doubt, to the little value attached to realty, and partly to the manifest current of American authority as evidenced by the decisions of Chancellor Desaussure, (*Huger* v. *Huger*, 3 Des. 18, and *Stapleton* v. *Langstaff*, Id. 22), and of Chancellor Kent, (*Matter of Salisbury*, 3 Johns. Ch. 347, and *Hedges* v. *Riker*, 5 Johns. Ch.

163), and the dicta of text-writers (American ed. of 1 Fonbl. Eq. B. 1, ch. II, § 5, note *f*; 2 Kent Com, 230 ; Story Eq. Jur., § 1357), it was a matter of every-day occurrence for our chancery courts to sell the real estate of infants, when satisfied that the sale was for their interest. About the year 1845 for the first time doubts began to be entertained of the power of the courts in such cases. Under these circumstances, the case of *G. C. Brown, ex parte,* the petition in which was drawn by me, came before the courts. The chancellor sustained the application for the sale of the petitioner's realty, and an appeal was taken to the supreme court expressly, and solely with a view to test the question of jurisdiction, the case being otherwise a clear one. In the report of the case as it appears in 8 Hum. 200, the reporter states that the petitioner claimed the land under the will of his father, and the learned judge who delivers the opinion of the court seems to take the fact for granted. But the truth was that the property had been conveyed to him by a deed of gift, and this fact, to my certain knowledge, was distinctly stated in the petition, and in the statement of facts embodied in the written arguments of both sides. It was this very fact that prevented the case from falling within the letter, as well as the spirit, of the act of 1827, 54, and rendered an appeal to the supreme court necessary. The court say that they have examined the case upon authority, with the view of determining the power of the chancery court, under its general jurisdiction, without statutory aid, to convert the estates of infants in proper cases, and were prepared, though not without some difficulty, to assert such jurisdiction. But the court expressed itself fully satisfied that the jurisdiction was conferred by the act of 1827, 54. In *Martin* v. *Keeton,* 10 Hum. 539, the learned judge who delivers the opinion, by way of dictum, expresses a very decided conviction in favor of the general jurisdiction of the court; while in *Rogers* v. *Clark,* 5 Sneed, 668, another judge of the same bench utters an equally emphatic dictum to the contrary, coupled with the words " as we have re-

cently held." If these words refer to a positive decision on the point, that decision has never been reported. Recently in the case of *Thompson* v. *Mebane*, 4 Heisk. 370, the learned judge, who delivers the opinion of the court, again, and by way of dictum, sustains the general jurisdiction of the court. "We have no hesitation," he says, "in declaring that a court of chancery had general jurisdiction, aside from the acts of 1827 and 1829, over the estates, as well as the persons of infants, and could, under appropriate circumstances, and for proper purposes, direct the sale of their real property."

This being the latest utterance of the supreme court on the subject, and being in accord with the conclusion reached in the only case reported where the point was directly raised, settles the question so far as this court is concerned.

The difficulty of the English courts in sustaining the jurisdiction, seems to have grown out of their inability, without express legislative authority, to divest the legal title. For, where the legal title was in trustees, these courts never hesitated to order the sale, if shown to be to the interest of the infant beneficiaries. And so, when the infant was required to elect between realty and personalty, the courts saw no difficulty in electing for him, and divesting him of realty in a proper case. *Bingham* v. *Lord Clanmorris*, 2 Molloy, 393 and notes; *Taylor* v. *Phillips*, 2 Ves. 23; *Calvert* v. *Godfrey*, 6 Beav. 97. In this state, the difficulty of divesting the title was removed by the act of 1801, ch. 6, § 48. I have, therefore, myself never been able to understand upon what ground the argument against the general jurisdiction of the court could be rested. It is my duty, however, whatever may be my own convictions, to follow the rulings of the supreme court. As the legal title in this case is in a trustee, there can be no doubt of the general jurisdiction of the court even in England.

The Code, it is conceded, in § 3323, *et seq.*, confers ample jurisdiction on the chancery courts in the sale of the realty of persons under disability. The two sections which most directly bear on this discussion are:

Section 3327. "The jurisdiction may be exercised as to any kind of property, and whether the interest or estate. of the party under disability, or any of the parties litigant, is in possession, reversion or remainder, or subject to any limitation, restriction, or contingency whatever."

Section 3337. "Property so limited that persons not in being may have an estate or interest therein, may also be sold under the provisions of this chapter, if all those interested then in being are before the court, and it is satisfactorily shown to be necessary, or manifestly for the interest of such persons then in being, having a common interest with those who may come into being."

It is conceded, and of this there can be no doubt, that the first of these sections authorizes the sale of the property in question, so far as the jurisdiction depends upon the subject-matter. But, it is insisted, that the second of these sections requires in addition jurisdiction of the person, and that cannot be had in the present instance, because the person who may take in remainder is uncertain, and no person now in being can be said to have a common interest with such person ; that the statute contemplated a character of case where the title is vested in persons in being, but subject to open and let in after-born individuals, and not to a case where the persons in being may, by their previous death, take nothing, and a person not now in being may take all. The argument is ingenious and plausible, if it be not sound.

The argument, when critically examined, is found to be of a two-fold character.

1st. It goes upon the idea that the statute requires that the estate of those in being, should be the same as the estate of those to come into being. "Common interest," in this view, means the same title or estate.

2d. It also goes upon the idea that the remainder estate in this case is not vested in any one until the termination of the life estate, and therefore no person in being can have a "common interest" with persons not in being, who may eventually take, and that therefore these latter cannot be bound.

If the learned counsel be correct, then the court has no jurisdiction to sell realty, "so limited that persons not in being may have an estate or interest therein," unless the same estate is vested absolutely in some person then in being, who must be before the court.

In this view, the only cases which would fall within the statute are devises of realty for life, with vested remainder to children, where the estate would open to let in after-born children. It would not apply to the most common devise or conveyance to a person for life, and then to children, or other persons, *as a class*. For, it could not be known whether any of the class living at one time would survive the tenant for life. The statute would not apply, in fact, to any contingent estate, where the contingency might deprive persons in being at any one time of the estate, and throw it upon persons not then in being, although the estate or interest of the former might be the same as those of the latter. In other words, contingent interests cannot be sold, although the statute expressly provides for the sale of estates subject to " any contingency whatever;" and "property so limited that persons not in being may have an estate or interest therein " cannot be sold, even if there are persons then in being having a common interest with those who may come into being, although the statute undertakes expressly to provide for exactly such cases.

The trust in this case is to Barnard for life, and then for "the use of such child or children, or the children of such child or children as may be then living." The remainder is to children, or the children of such children. The only child of Barnard and wife is before the court, and the only child of such child. There is, therefore, before the court a person in being having the same estate as those persons who may come into being. The estate moreover is contingent both as to those in being and those not in being, depending upon survivorship, and the estate is clearly vested in those in being subject to be divested by the contingency of death before the falling in of the life state. Literally, therefore, both

requirements of the argument in support of the demurrer are present, and the case falls within the letter of the statute.

There seems to be some misapprehension in regard to the inherent power of a court of equity over the "whole estate" in land, where all the parties are not or cannot be brought before the court. Lord Redesdale said in *Giffard* v. *Hort*, 1 Scho. & Lef. 408, "That it is sufficient, as courts of equity have determined on grounds of high expediency, to bring before the court the first person entitled to the inheritence, and, if no such person, *then the tenant for life.*" Lord Eldon places the doctrine upon the ground of necessity, and "by analogy to the law, according to which there is no doubt, by a recovery in which a subsequent remainder-man is vouched without prejudice to the intermediate remainder, you may bar all remainders behind." See *Lloyd* v. *Johnes*, 9. Ves. 37, 64, where he elaborately discusses the subject, and shows the importance of the rule to the remainder-man himself, as entitling him to the benefit of a suit instituted by the party having the first vested estate of inheritance; see also *Cockburn* v. *Thompson*, 16 Ves. 321; *Reynolds* v. *Perkins*, Amb. 564; *Finch* v. *Finch.* 2 Ves. 492. This doctrine applies equally to suits by or against the estate; to a suit to foreclose a mortgage, 1 Scho. & Lef. 408; to settle the terms of a trust or executory settlement, 9 Ves. 37; 2 Ves. 492; to stay waste, 2 P. Wms. 268; to have partition of lands, *Gaskell* v. *Gaskell*, 6 Sim. 643; and in fine, to all cases of every nature and character involving the whole estate, 1 Dan. Ch. Pr. 274; 1668; Story Eq. Pl. § 144, *et seq.*; Mitf. Eq. Pl. 69; Story Eq. Jur. § 656., *a.*

If the terms of an executory trust may be settled so as to be binding on remainder-men, by having before the court the person vested with the first estate of inheritance; and if partition can be made under like circumstances; it would seem to follow, by analogy, that the property itself might be changed, all persons *in esse* being before the court, if the power to change the property belongs to the court, upon its being satisfactorily shown that such change is necessary, or

manifestly for the interest of all parties. In *Cecil* v. *Salisbury*, 2 Vern. 224, the court authorized long leases on the real estate of infants, and the same thing was done in *Hodges* v. *Riker*, 5 Johns. Ch. 163, although the rights of children who might afterwards come into being were necessarily involved. And the general rule of the English courts as above, namely that it is sufficient to bring before the court the first person entitled to the inheritance, and if no such person then the tenant for life, has been followed by our American courts. *Eagle Ins. Co.*, v. *Cammet*, 2 Edw. 127 ; Story Eq. Pl., § 144 ; *Baker* v. *Baker*, 1 Rich. Eq. 392. In this last case, it was conceded by the court, that "the court of equity has the power to sell the absolute fee in lands, on the application of the person having the defeasable fee, against the will of the contingent devisee," but the application was refused upon other grounds.

Upon these general principles, and the decisions bearing upon family compromises, I filed a bill in the chancery court at Columbia in 1847, against all persons then in being, to set up a family compromise of the property of Peter R. Booker, who had made a will tying up his property to the full period of lives in being and twenty-one years thereafter, and necessarily affecting the interests of persons not then in being. A branch of this will was before the supreme court and is reported under the style of *Booker* v. *Booker*, 5 Hum. 505. The bill thus filed by me was, upon full argument and careful examination of the authorities, sustained by Chancellor Cahal, and the will in effect set aside, and the property settled upon other trusts. This settlement has recently come before the supreme court, and, as I understand, was sustained in the case of *Clopton* v. *Booker*.

The case of *Read* v. *Fite*, 8 Hum. 328, if it was intended to be based upon the want of jurisdiction of the court, can scarcely be considered as a sound exposition of the law. But if it was at the time, the legislature undoubtedly intended to change it by the provisions of the Code under consideration.

I am of opinion, therefore, that the demurrer cannot be

20

sustained upon the main ground urged in its support. But I have very serious doubts whether the bill, conceding the jurisdiction of the court, contains enough to justify the relief sought. It does not sufficiently appear that a sale would be to the interest of any person except the tenant for life. If the complainant chooses to proceed, however, I will allow him to do so upon the penalty of the costs, and the fee of the solicitor who represents the defendants under disability. Overrule the demurrer.

NOTE.—The bill was afterwards amended stating a surrender of his interest by the tenant for life, and upon proper proof, the sale asked for was ordered. This decree, upon appeal, was affirmed by the supreme court.